### Hubbard v. Louisville & Nashville Railroad Company.

(Decided June 16, 1925.)

## Appeal from Estill Circuit Court.

1.  Master and Servant—Risks Assumed by Servant.—Risks assumed by servant are of two classes, those ordinary risks not created by master's negligence, but which are incidental to service, and those extraordinary risks arising from negligence of master of which servant has knowledge, actual or constructive, or which are so obvious that an ordinarily prudent person under like circumstances would have observed and appreciated them.

2. **Master and Servant—Employe Held to have Assumed Danger of Moving Car Wheels.**—Employe, aiding in rolling pair of car wheels from storage tracks, who as was customary rolled such wheels against rail of repair track which lay at right angles to storage track and six or seven inches higher, expecting wheels by reason of their momentum to overcome obstruction of cross-rail, held to have assumed danger of their rebounding to his injury.

3. **Master and Servant—Assumption of Risk Defense Under Federal or State Employer's Liability Acts.**—In absence of some violation of statute, doctrine of assumed risk applies equally to cases arising under federal employers' liability act (U. S. Comp. St., sections 8657, 8665), state employers' liability act (Kentucky Statutes, sections 4880, 4987), or common law.

RIDDELL & SHUMATE for appellant.

HUNT, NORTHCUTT & BUSH, R. R. FRIEND and WOODWARD, WARFIELD & DAWSON for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

In this suit to recover damages for personal injuries, at the close of plaintiff's evidence the jury returned a directed verdict for the defendant, and judgment was entered in accordance therewith. Plaintiff appeals.

It is substantially pleaded and proven that in the town of Ravenna the Louisville and Nashville Railroad Company has a number of repair tracks running parallel and intersecting with its main line on which it repairs rolling stock used on its road. At right angles with the outside of these tracks are a number of storage tracks. The latter do not connect with the other track but run squarely against its outer rail. Two wheels and an axle are all molded in one piece and are thus kept on the storage tracks and when needed are run out upon the repair tracks. At the point of junction the rails of the repair tracks are six or seven inches higher than those of the storage tracks and in transferring wheels from the latter to the former the method pursued is to run them rapidly over the storage track and thus gain sufficient momentum to overcome the obstruction at the junction; that on the day of the injury the plaintiff and two other workmen were directed by the foreman to bring a pair of wheels from the storage track to repair a caboose which was then in use on the road or shortly to be used; that they attempted to do this but the wheels instead of pass-

ing over the rails of the storage track rebounded, striking him on the side and hip and causing serious injuries. The evidence indicates that the foreman was in a hurry for the wheels, though it is not shown that he gave any specific instructions about the matter. Plaintiff had been at work at this place for seven or eight months and his duties included this character of work, though he did not know of any other instance in which the wheels rebounded in this way. It does not appear whether the tracks had been originally constructed in the manner indicated but it is not claimed that the condition was changed during the period mentioned.

Accepting these facts as true it may be said that appellee failed to furnish a reasonably safe place for its employes to perform their labor. On the other hand, the defect above described was open and obvious, and after seven months' use by appellant he must have had full and complete knowledge of it, and the case turns upon the question whether under such circumstances he is precluded from a recovery.

In a well considered and carefully prepared opinion in C. & O. Ry. Co. v. De Atley, 159 Ky. 687, the defenses of contributory negligence and assumed risk are fully analyzed and the following definition laid down as to assumed risks:

"The risks which a servant assumes may logically be divided into two classes: (1) Those which are not created by the master's negligence, or the ordinary risks of the service; and (2) those which are created by the master's negligence or the extraordinary risks. Choctaw O. & G. R. Co. v. Jones, 77 Ark. 367, 4 L. R. A. (N. S.) 837. The ordinary risks are those which are ordinarily and usually incident to the service in which the employe is engaged; thus, the employe assumes the risk of injury from simple tools; a brakeman assumes the risk of injury from the usual and necessary jerks attending the prudent operation of a train; and, unless otherwise provided by statute, he assumes the risk of dangers arising from the negligence of a fellow servant. In addition to these ordinary risks there are extraordinary risks not contemplated by the terms of the employment, but arising from the negligence of the master. Such risks are not ordinarily assumed by the servant. It

is only where he has knowledge, actual or constructive, of the existence of the danger that he can be said to have assumed the risk. Union Pac. Ry. Co. v. O'Brien, 161 U. S. 451; Chicago M. & St. P. Ry. Co. v. Benton, 65 C. C. A. 60, 132 Fed. 640; 1 LaBatt, Master & Servant, 638. These extraordinary risks usually grow out of a failure on the part of the master to use ordinary care to furnish a servant a reasonably safe place to work or reasonably safe appliances for work. The risk of injury from such unsafe place or such defective appliance the employe does not assume until he becomes aware of the disrepair or of the defect, and of the risk arising therefrom, unless the defect and risks are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them. When, however, the employe knows of the defect and appreciates the risk and continues in the employment without objection or without assurance that the defect will be remedied, he assumes the risk, even though it arises out of the master's breach of duty.''

This principle is firmly established in this court. Davis, Agt. v. Briggs, 201 Ky. 784; Flaig v. Andrews Steel Co., 141 Ky. 391; Corbin Ice & Carbonating Co. v. Ellison, 169 Ky. 250; Louisville Water Co. v. Darnell, 189 Ky. 771; Baldridge v. W. M. Ritter Lumber Co., 192 Ky. 695; Hatfield v. N. & W. Ry. Co., 193 Ky. 155; Wilson v. Chess-Wymond Co., 117 Ky. 567.

True we have a line of cases in which it is stated that a servant does not assume risks occasioned by his master's negligence. Fuson v. New Belle Jellico Coal Co., 155 Ky. 95; N. W. Ry. Co. v. Thompson, 161 Ky. 814; C. & O. Ry. Co. v. Shaw, 168 Ky. 557, and under the facts appearing in those cases the expression may be hypothetically correct; however, it cannot without qualification be accepted as a correct statement of the rule.

As said in Hines v. Cox, 192 Ky. 94:

"It is sometimes said that a servant never assumes risks arising from the master's negligence, but this statement of the rule is entirely too broad. Correctly stated the rule is that a servant never assumes risks growing out of the master's negligence unless he knows of the failure of duty and consequent danger or the failure of and the consequent danger

therefrom are so obvious that an ordinarily prudent person in his situation would have observed the one and appreciated the other.''

Appellant testifies that he had never known the wheels to rebound before and it is argued that, therefore, he did not appreciate the danger arising from the defect in the rails. A similar contention was made in the Cox case, *supra,* and in reference thereto the court said: ''While appreciation of the danger is an essential element in the assumption of risk, it is not necessary in a case of this kind that the servant should anticipate the particular consequences that actually resulted, but the real basis is if he knows or if it is plainly obvious to a person of ordinary prudence in his situation.'' Again we stated in Consolidation Coal Co. v. Hamilton, 170 Ky. 393: ''The distinction he would make by saying he knew the defects of the machine but did not know the dangers incident to its operation is more fanciful than meritorious. When one thoroughly understands a machine and how to operate it he will be presumed to understand the dangers incident to its operation.''

In this case, the failure to properly grade the tracks at the junction of the rails was open and obvious to anyone. Not only that, but appellant was fully acquainted with it and must have appreciated the consequent dangers from its use in that condition. He made no complaint and the master made no promises to repair or remedy it and upon the authority of the above cases he assumed the risk and consequent danger.

There is some confusion in the pleading as to whether the cause of action is based on the federal liability act, the state employers' liability act or the common law, and as to the applicability of the plea of contributory negligence; but it is unnecessary to consider the question of contributory negligence as it is not claimed that any statutory provision has been violated and in the absence of such violation the doctrine of assumed risk is equally applicable to any of the causes of action suggested, and it clearly applies.

We conclude that the court did not err in giving a peremptory instruction for defendant.

Wherefore the judgment is affirmed.