## Swango v. Commonwealth.

Jan. 24, 1939.

M. E. STRANGE and BEVERLY WHITE for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—
Affirming.

The appellant and defendant below, Burford Swango, was, between 5:30 and 6 o'clock P. M. of November 7, 1937, traveling east in a one-seated coupe automobile on State Highway No. 15 between Clay City in Powell county and Stanton, the county seat of the same county. In the suburbs of the latter city he collided his vehicle with Earnest Sparks, who with his wife and another lady were pedestrians traveling the highway in the same direction as was defendant, and close to the outside edge of the macadam. The collision resulted in the almost instant death of Sparks. The grand jury of the county at the next session of the circuit court returned an indictment against appellant, in which he was accused of voluntary manslaughter in bringing about the collision resulting in the death of Sparks. At his later trial he was convicted and punshed by confinement in the penitentiary for two years. From the verdict and judgment pronounced thereon he prosecutes this appeal, after his motion and grounds for a new trial were overruled.

Five alleged grounds for setting aside the verdict and judgment were incorporated in the motion for a new trial and which were: (1) Error of the court in overruling defendant's motion for a continuance of the trial; (2) rejection of competent testimony offered by defendant; (3) the verdict is unsupported by the testimony and was returned under the influence of passion and prejudice of the jury; (4) "Because the verdict of the jury was contrary to the law and evidence"; and (5) "Because the court erred in not giving the whole law of the case."

1. The absent witness, as a basis of the application for a continuance, was a girl named Delsie Powell, who was one of the three persons riding in the automobile of defendant, the other two being himself and Victor Smallwood—all of whom occupied the only seat in the automobile with the girl in the middle. No one knew anything about her, and it is not even shown where she resided, nor is it shown that she was even a resident of Powell county or a citizen of Kentucky. Smallwood

was asked as to who she was and his answer was: "She is just a girl is all I know about her." A subpoena was obtained in due time for her attendance and it was placed in the hands of an officer but was not executed. It would thus appear that appellant's right to continue the case because of her absence is, to say the least of it, extremely doubtful. But, however that may be, her testimony as set out in the affidavit was of but little if any material value, it being chiefly directed to the fact that defendant was not drunk upon the occasion of the homicide. That testimony was purely cumulative, since no witness in the case testified that he was drunk, but on the contrary that he was not in that condition; except the undertaker who prepared the body of the deceased for burial stated that he smelled alcohol on appellant's breath. Moreover, defendant did not offer to, nor did he read the affidavit for continuance as the testimony of the absent witness, but which he had the right to do. It is, therefore, clear that the court did not err in overruling the motion.

2. The rejected testimony complained of in ground (2) concerned a witness introduced by the commonwealth, whose testimony was straightforward and intelligent, and who claimed to be an eye-witness to the collision which he described as he saw it. He was asked on cross examination if he had not been convicted—following the accident and before the trial—on a lunacy inquest, to which the commonwealth objected because it was irrelevant, since no such ground for impeachment was permissible under the practice as contained in the Code, or the settled law; and, furthermore, that if it were otherwise then the introduction of the record of the conviction of the witness was the proper method of proving the fact. The first ground of objection need not be disposed of, since we are convinced that the second one clearly supported the court's ruling in rejecting the offered testimony in the manner adopted. If the witness had been subjected to such a judicial inquiry it was, of course, a matter of record and which constituted the best proof of the fact and which could not be dispensed with, unless the record had become destroyed, which was not attempted to be proven. However, the avowals that were made were and are exceedingly vague and wholly lacking in completeness. But whatever proceedings that may have been had relating to the mental condition of the witness, it was clearly shown that he

had become fully restored and he stated as a part of the avowal—in the absence of the jury—that the only affliction with which he suffered at the time were consequences of a protracted debauch, and that his confinement for fifteen or twenty days completely sobered and restored him to his perfectly normal condition. It is, therefore, clear that this ground in the circumstances can not be sustained.

3. A disposition of the third ground requires a statement of the substance of the testimony. Appellant, with his automobile and his cargo of fellow travelers, had gone to Clay City with no object in view. While there they consumed some edibles in a restaurant, at which the evidence discloses intoxicating liquor was also sold, but appellant claims that he consumed none and that he had drunk prior thereto only one bottle of near beer. After finishing the meal the parties started back to Stanton and it was on that return trip that the fatal accident occurred. He testified that he was traveling at a speed between 25 and 30 miles per hour on the right hand side of the road, and that near the place of the accident an automobile passed him on the other side of the road, the lights from which somewhat dimmed his vision, although he had perfect lights on his car, and up-to-date brakes, which he claimed were the best. About 600 yards ahead of him was a garage in front of which a car was standing headed towards him with its lights burning and he claimed that the lights from that car and from the passing car "blinded me and I could not see as good as usual." He clearly shows that he was not maintaining a look-out, and says that he never saw the deceased, Sparks, or either of the ladies who were walking with him until he collided with the deceased, although the road was straight and nothing obstructed his view. The lights from the standing car 600 yards beyond him could not in any way prevent his seeing the pedestrian ahead of him, if he had been paying the slightest attention in maintaining a look-out ahead; nor was it shown by any convincing testimony that the passing car did impair appellant's vision ahead of his car so as to completely obscure the presence of such pedestrian travelers and appellant does not so claim in his own testimony. Besides, the commonwealth proved that no car passed him at the time and place.

The commonwealth introduced a witness who conversed with appellant on the same evening shortly after

the accident and to whom he stated that he saw the three pedestrians walking ahead of him, and that he "Blew and blew and blew and that they would not get out of the road." When asked if he had made that statement his answer was: "I don't remember that I told him that. * * * If I said that I don't remember: I guess I had killed a man and it excited me." Without consuming further time or space we deem it sufficient to say that the evidence as a whole conclusively shows that, although appellant may not have been traveling at an excessive, dangerous and reckless rate of speed, yet he was grossly negligent in failing and refusing to observe his duties towards those who might be using the highway in front of him by maintaining a look-out for their presence. If travelers in automobiles upon public highways could be excused from answering criminally for such gross negligence, then no one traveling the highway would be safe, and public thoroughfares would be converted into slaughter pens. Of course, the law requires—in order for one to be punished criminally for reckless driving—that his acts must be of such wide departure from due care as to amount to gross and reckless operation of his automobile, but we can imagine no greater reckless operation of an automobile on a highway than that of shutting one's eyes and deliberately declining and refusing to maintain a lookout ahead so as to discover the presence of persons having an equal right to the use of the highway.

Domestic cases sustaining prosecutions and convictions founded upon analogous facts are: Jones v. Commonwealth, 213 Ky. 356, 281 S. W. 164; Largent v. Commonwealth, 265 Ky. 598, 97 S. W. (2d) 538, and Newcomb v. Commonwealth, 276 Ky. 362, 124 S. W. (2d) 486 It is true that in the Newcomb Case, which reviewed prior ones the chief grounds upon which the necessary gross recklessness was based, was intoxication of the defendant, but it is pointed out in the opinion that other facts manifesting that degree of recklessness in driving will be sufficient to sustain the prosecution. It is, therefore, our conclusion that this ground is entirely without merit, and the same reasons also dispose adversely of ground (4).

5. To begin with ground (5) cannot be considered by us, even if it were meritorious, for the reason that the giving and refusing of instructions by the court was not manifested by any bill of exceptions, the only docu-

ment taking the place of a bill of exceptions (and which if properly prepared would do so under numerous rulings of this court) is the stenographer's transcript of the evidence. No other bill of exceptions was filed or offered to be filed. It is true that the clerk on his own initiative has copied into the record what he says were the instructions given by the court; but in the notes to section 335 of our Civil Code of Practice (relating to the preparation and filing of bills of exceptions) is found this statement: "Instructions should be made a part of record either by an order of court or by embodying them in bill of exceptions, the proper mode is to include them in bill of exceptions, if not made part of record in one of these ways they will not be considered by the court, although the clerk may copy them in the record. Huffman v. Charles, 97 S. W. 775, 30 [Ky. Law Rep.] 197; Rogers v. Zumbiel, [Ky.] 114 S. W. 323; Nave v. Riley, 146 Ky. 276, 142 S. W. 388; [Meaux v. Meaux] 81 Ky. 475, 5 [Ky. Law Rep.] 548; [Forest v. Crenshaw] 81 Ky. 51, 4 [Ky. Law Rep.] 596; [Meador v. Turpin] 4 Metc. 93; Tinsley v. White, 54 S. W. 169, 21 [Ky. Law Rep.] 1151; Gooch v. Collins, 156 Ky. 282, 160 S. W. 1038; Mudd v. Shroader, 152 Ky. 696, 154 S. W. 21; Gardner v. Alexander, 159 Ky. 713, 169 S. W. 466." A still later case to the same effect is Colley v. Commonwealth, 232 Ky. 590, 24 S. W. (2d) 280. There are also numerous others to the same effect. The reason for that rule is that such matters as are required to be brought to this court by a bill of exceptions should be certified to by the presiding judge as having occurred at the trial, and unless so done and then filed by an order of court, such matters may not be considered by us on appeal.

If, however, the instructions had been incorporated in the stenographer's transcript of the evidence and that entire transcript, including the incorporated instructions, had been approved by the presiding judge and the combined document filed as a bill of exceptions and evidence, then under numerous rulings we could consider the instructions, since in one sense the bill of evidence is a part of the bill of exceptions. This ground, therefore, we repeat, cannot be considered by us. But for the satisfaction of counsel we will state that the instructions copied into the record by the clerk, if they were the ones given by the court, complied substantially with the law as declared in our prior opinions cited

supra, and if they had been properly brought here we would then be without authority to sustain this ground.

Wherefore, for the reasons stated, the judgment is affirmed.