# Trent v. Commonwealth.

Oct. 30, 1942.

R. A. Dunn for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

Ernest Trent, 25 years of age, was convicted in the Breathitt Circuit Court of the wilful murder of Hiram Smith and his punishment was fixed at death. His motion for a new trial assigns twelve errors, but in his brief only five grounds are argued: 1. The verdict is flagrantly against the evidence; 2. the court erred in summoning a jury from Fayette County and in appointing Sewell B. Williams as special bailiff to summon and guard the jury; 3. the officers did not proceed according to law in arresting appellant; 4. an instruction should have been given covering the duties of officers in making an arrest; 5. the misconduct of the jury.

A proper consideration of the first ground necessitates a brief resume of the evidence. On Jan. 14, 1942, the day of the tragedy, Hiram Smith was a constable in Breathitt County and John Rice was Chief of Police for the City of Jackson. Information had reached them that a car had been stolen and having a description of the culprit they were looking for him. About 5 o'clock P. M., they found appellant in Napier's restaurant in Jackson. The officers asked Trent who he was, to which he replied, "Ed Combs," saying he could identify himself by a social security card if they would accompany him to his nearby room.

Just arriving in Jackson that day, Trent had registered at the Lovely's Rooming House under the assumed name of Carl Johnson, where he was assigned to room No. 2 on the second floor. The three men entered Trent's room with him in the lead, Smith next and Rice,

who was wearing a policeman's uniform, was last. Due to the lateness of the hour and the shades being down with no light on, the room was almost dark. Up to this time everything was amicable with not even a harsh word having been spoken by any of the three. As they entered the room, Smith ran his hands over appellant's body to ascertain if he were armed.

Trent's testimony is that as he approached a bed in the back of the room to obtain his identification card, Smith, without a word, opened fire on him, which he promptly returned with a .38 Special he took from a jacket on the bed. Thereupon, Rice, who was at the entrance door of the room, shot and Smith fell immediately after Rice fired. A bullet entered Smith's right temple and lodged just under the skin over the left ear. Another bullet grazed Smith's chest. He never spoke after he was shot. After Smith fell, appellant shot a couple of times at Rice who retreated to the hall and called for help. Trent then went through the window in the rear of his room, climbed down a cable fastened to an adjoining building and made his escape. While not knowing exactly how many shots he fired, Trent thinks he shot twice at Smith and twice at Rice.

Rice's version of the shooting directly contradicts Trent. As Rice waited in the door for the light to be turned on he heard the report of a pistol and saw the flash go toward Smith, who was several feet from appellant. Trent then turned his pistol on Rice inflicting a superficial wound in his chest, and the fourth bullet hit the door beside Rice's head. Rice withdrew to the hall and heard a large pistol fire (Smith was carrying a .44) followed by two more shots from it. Rice, who had a .38 Special, testified he did not fire a shot and did not even draw his pistol until he retired to the hall where he expected appellant to make a break through the door. The whole affray was over in a few seconds.

If Rice's testimony is believed, Smith was killed by Trent in cold blood. If Trent's testimony is true, the shots he fired were in self-defense and it was Rice, not he, who killed Smith. In the circumstances it was for the jury to determine whether they would accept Rice's or Trent's version of the killing. Crawford v. Com., 281 Ky. 557, 136 S. W. (2d) 754; Carter v. Com., 278 Ky. 14, 128 S. W. (2d) 214; Clark v. Com., 237 Ky. 112, 34 S. W. (2d) 963. When Trent was arrested sev-

enteen articles of jewelry were found on his person, fourteen rings and three wrist watches; also, he admitted on the trial he had stolen a car on the day of the killing. The record shows he had four previous felony convictions against him. It is not strange that the jury accepted the testimony of Rice rather than that of appellant, and no open mind can say the verdict is flagrantly against the evidence. Indeed, it is in full accord with the evidence. When upon the proven facts it is reasonable for the jury to return a verdict of guilty, such verdict is not flagrantly against the evidence. Shepherd v. Com., 236 Ky. 290, 33 S. W. (2d) 4; Davenport v. Com., 285 Ky. 628, 148 S. W. (2d) 1054.

Appellant cannot complain that the jury was summoned from Fayette County, inasmuch as the record shows that when a jury could not be secured from Breathitt County, an order was entered to the effect that both the Commonwealth and appellant agreed it might be summoned from either Fayette, Clark, Powell or Morgan County. While appellant complains of Sewell B. Williams being appointed special bailiff to summon and guard the jury during the trial, there is nothing in the record showing his disqualification to act in this capacity or his prejudice against appellant, or any misconduct on his part.

The third and fourth grounds will be considered together. The record shows the officers did not arrest the appellant—they only asked him his name and he volunteered to identify himself if they would accompany him to his room. The shooting was not the result of the arrest and appellant does not contend he was resisting an illegal arrest at the time the shots were fired, but that Smith opened fire on him without provocation and that he returned the fire in self-defense. Clearly there was no evidence upon which the court could have based an instruction upon the duty of the officers while making an arrest. Instructions are required only on matters in issue. Stanley's Instructions to Juries, sec. 764, p. 1032; McGee v. Com., 246 Ky. 445, 55 S. W. (2d) 382; Brinegar v. Com., 285 Ky. 400, 147 S. W. (2d) 1037.

One of the grounds set out in the motion for a new trial was the misconduct of the jury in that they were allowed to separate and were under the influence of liquor during the consideration of the case. The trial

judge heard testimony on this point and same was reported and the transcript of that evidence bears an endorsement "Offered to be filed in open court, July 1, 1942, G. L. Allen, C. R. C. C." But we find no order in the record filing it; nor was this transcript attested by the circuit judge as provided by KRS Section 28.470, KS Section 4644. Therefore, we have no authority to consider it. Conway v. Com., 261 Ky. 721, 88 S. W. (2d) 957. Another reason why we cannot consider the testimony heard on the motion for a new trial is that it is not incorporated in, or made a part of, the bill of exceptions. Schuster & Chambers v. Com., 232 Ky. 171, 22 S. W. (2d) 586; Voils v. Com., 229 Ky. 305, 17 S. W. (2d) 238, and cases therein cited. However, as the death penalty was inflicted here, we have taken occasion to carefully read the testimony heard on this motion and had we authority to consider it, we would be compelled to hold it did not sustain appellant's contentions.

There was no evidence that the jury was under the influence of liquor while hearing the testimony or during the consideration of the case. The most the evidence shows is that some of the jurors took a bottle of beer with their lunch and that others may have taken a small quantity of liquor in their room after court adjourned the night they remained together. In Smith's Adm'x v. Middlesboro Electric Co., 164 Ky. 46, 174 S. W. 773, 775, 782, Ann. Cas. 1917A, 1164, it was written:

"The occasional taking of intoxicating spirits, in moderate quantity by jurors, while not a thing to be encouraged, has never been held as misbehavior authorizing the granting of a new trial in Kentucky. * * * While in a few jurisdictions it has been held that the intoxication of a juror at all during the trial is a ground for a new trial, the weight of authority is to the effect that a new trial should not be granted unless the intoxication interfered with the proper hearing and decision of the case by the jury."

See, also, 16 C. J., Section 2537, p. 1080; 23 C. J. S., Criminal Law, Section 1363; 64 C. J. Section 802, p. 1017; Liverpool & London & Globe Ins. Co. v. Wright, 166 Ky. 159, 179 S. W. 49; Gordon v. Louisville, St. L & T. Ry. Co., 29 S. W. 321, 16 Ky. Law Rep.

713; Robinson v. State, 33 Ark. 180; Davis v. People, 19 Ill. 74, to the same effect.

The separation of the jury was but momentary when one of its members walked along in front and entered a restaurant while the others stopped for their picture to be taken. One of the eleven who had stopped immediately went after the stray and brought him back to their body. A temporary separation of a juror from his fellows, when he remains within view of the sheriff and the other jurors and where there is no effort made to communicate with third persons concerning the case under trial, does not violate Section 244 of the Criminal Code of Practice. Wynn v. Com., 188 Ky. 557, 222 S. W. 955; Murphy v. Com., 263 Ky. 347, 92 S. W. (2d) 342.

We find no error in the record prejudicial to appellant's substantial rights, hence the judgment is affirmed.

Whole Court sitting.